IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ISABELLA NUNES-BAPTISTA,      )      CIVIL NO. 11-00104 LEK-BMK
                              )
          Plaintiff,          )
                              )
     vs.                      )
                              )
WFM HAWAII, LLC, dba WHOLE    )
FOODS MARKET, et al.,         )
                              )
          Defendants.         )
_____)


**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, FILED SEPTEMBER 27, 2011**

          Before the Court is Defendant WFM Hawaii, LLC doing

business as Whole Foods Market's ("Defendant" or "Whole Foods")

Motion for Summary Judgment ("Motion"), filed September 27, 2011.

Plaintiff Isabella Nunes-Baptista ("Plaintiff") filed her

memorandum in opposition on January 5, 2012, and Defendant filed

its reply on March 23, 2012.  This matter came on for hearing on

April 9, 2012.  Appearing on behalf of Plaintiff was

Charles Brower, Esq., and appearing on behalf of Defendant was

Jeffery Harris, Esq.  After careful consideration of the Motion,

supporting and opposing memoranda, and the arguments of counsel,

Defendant's Motion is HEREBY GRANTED for the reasons set forth

below.

**BACKGROUND**

          Plaintiff filed a Complaint in the First Circuit Court

of the State of Hawai`i on February 14, 2011, which Defendant removed to this Court on February 17, 2011. The Complaint alleges violations of state and federal discrimination laws, hostile work environment, and intentional infliction of emotional distress ("IIED"). Plaintiff claims that she was hired by Defendant in September 2007, and was working as a Bakery Manager at the time of her termination on July 30, 2009. She is female and was eight months pregnant at the time of her termination. Plaintiff alleges that, sometime in 2009, she submitted doctor's notes requesting accommodation due to her pregnancy, which included regular breaks, but that she was sometimes not allowed to take her breaks because there was no staff to cover her. On July 28, 2009, Plaintiff informed the general manager that she could work a maximum of six hours per day and needed thirty minutes to be off her feet every two hours, pursuant to a doctor's note. The general manager informed Plaintiff that he could not accommodate her request because he could not allow and employee to sit down on the job. [Complaint at ¶¶ 4-5, 9.]

During a July 29, 2009 shift, Plaintiff states that, while she was getting her breakfast, she was called into the kitchen to tell the staff what she needed to order for the coffee and juice bar. She was going from the back to the front of the market with her breakfast in her hand along with the bakery paperwork. Plaintiff states that she went upstairs to place her

bakery order as needed, and unintentionally forgot to pay for her breakfast at the fast food counter. The general manager approached Plaintiff while she was upstairs having her breakfast to request that he be provided with a copy of the receipt for Plaintiff having paid for the food, but she could not find the receipt, and offered to pay for the breakfast. [Id. at ¶ 9.]

The general manager then contacted Human Resources to conduct an investigation, suspended Plaintiff, and sent her home. He allegedly told her to return the next day at 11:00 a.m., which was not her scheduled start time. Plaintiff alleges that she was terminated on July 30, 2009, purportedly for the alleged theft, but in reality, she claims she was terminated because of her requests for accommodation due to her pregnancy. [Id.]

The Complaint alleges the following claims: (1) violations of Haw. Rev. Stat. § 378-2 and Title VII of the Civil Rights Act of 1964 due to her sex (Count I); (2) a hostile work environment based upon discrimination (Count II); and (3) an IIED claim. [Id. at ¶¶ 10-17.] Defendant moves for summary judgment on all there claims. [Mem. in Supp. of Motion at 1-2.] As to each claim, the Court finds, as a matter of law, that Defendant is entitled to summary judgment and that there is no genuine dispute as to any material fact as to these claims. See Fed. R. Civ. P. 56(a).

**DISCUSSION**

I. **Count I - Sex Discrimination**

The Court follows the framework established in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as to

Plaintiff's Title VII and Haw. Rev. Stat. § 378-2 discrimination

claims.

> McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93
> S. Ct. 1817, 36 L. Ed.2d 668 (1973), provides a
> "useful tool at the summary judgment stage" in
> addressing Title VII claims. See McGinest v. GTE
> Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).
> Under this framework, Plaintiff has the initial
> burden to establish a prima facie case of
> discrimination. E.E.O.C. v. Boeing Co., 577 F.3d
> 1044, 1049 (9th Cir. 2009) (citation and quotation
> omitted). "The requisite degree of proof
> necessary to establish a prima facie case for
> Title VII . . . on summary judgment is minimal and
> does not even need to rise to the level of a
> preponderance of the evidence." Cordova v. State
> Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir.
> 1997) (citation omitted).

Hughes v. Mayoral, 721 F. Supp. 2d 947, 957-58 (D. Hawai`i 2010).

A prima facie case under McDonnell Douglas requires a

plaintiff to offer proof that: (1) he belongs to a protected

class; (2) he performed his job adequately or satisfactorily;

(3) he suffered an adverse employment action; and (4) other

similarly situated employees who do not belong to the same

protected class were treated differently. McDonnell Douglas, 411

U.S. at 802; Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir.

2007); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018,

1028 (9th Cir. 2006).

> After a plaintiff establishes a prima facie
> showing of discrimination, the burden under the
> <u>McDonnell Douglas</u> framework shifts to a defendant
> to put forward a legitimate, non-discriminatory
> reason for its actions. <u>McDonnell Douglas Corp.</u>,
> 411 U.S. at 802, 93 S. Ct. 1817. A defendant's
> burden to articulate some legitimate,
> nondiscriminatory reason for the challenged action
> is merely a burden of production, not persuasion.
> <u>Chuang v. Univ. of Cal. Davis Bd. of Trs.</u>, 225
> F.3d 1115, 1123-24 (9th Cir. 2000). If a
> defendant puts forth a legitimate,
> nondiscriminatory reason, the burden shifts back
> to the plaintiff to show that the given reason is
> merely pretext for a discriminatory motive.
> <u>Boeing Co.</u>, 577 F.3d at 1049 (citation and
> quotation omitted).

<u>Hughes</u>, 721 F. Supp. 2d at 957-58.

"[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." <u>Hawn v. Exec. Jet Mgmt., Inc.</u>, 615 F.3d 1151, 1158 (9th Cir. 2010). That is, circumstantial evidence of pretext must be specific and substantial, <u>Becerril v. Pima Cnty. Assessor's Office</u>, 587 F.3d 1162, 1163 (9th Cir. 2009), and a plaintiff must do more than merely deny the credibility of the defendant's proffered reason. <u>Schuler v. Chronicle Broad. Co.</u>, 793 F.2d 1010, 1011 (9th Cir. 1986). "A plaintiff can show pretext directly, by showing that discrimination [or retaliation] more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." <u>Vasquez v. Cnty. of Los Angeles</u>, 349 F.3d 634, 641 (9th Cir. 2003); <u>see also</u> <u>Coghlan v. Am. Seafoods Co.</u>, 413 F.3d 1090, 1094-95 (9th Cir. 2005).

"Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory [or retaliatory] statements or actions by the employer." Coghlan, 349 F.3d at 1095. Circumstantial evidence requires an additional inferential step to demonstrate discrimination. Id.

> Despite this "useful tool" of the McDonnell
> Douglas framework, there is nothing that "compels
> the parties to invoke the McDonnell Douglas
> presumption." McGinest, 360 F.3d at 1122. "When
> responding to a summary judgment motion . . . [the
> plaintiff] may proceed by using the McDonnell
> Douglas framework, or alternatively, may simply
> produce direct or circumstantial evidence
> demonstrating that a discriminatory reason more
> likely than not motivated [the employer]."
> Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir.
> 2007) (quoting McGinest, 360 F.3d at 1122). If
> the plaintiff submits direct or circumstantial
> evidence, "a triable issue as to the actual
> motivation of the employer is created even if the
> evidence is not substantial." Id. (quoting Godwin
> v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th
> Cir. 1998)).

Hughes, 721 F. Supp. 2d at 957-58.

The same general framework applies for both Plaintiff's Title VII and Hawai`i state law discrimination claims. See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai`i 408, 426, 32 P.3d 52, 70 (2001); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002) (recognizing that Hawai`i courts use the McDonnell Douglas framework in analyzing analogous state law claims). Accordingly, the Court follows a single framework and analysis for these claims.

## A.  **Prima Facie Case**

Defendant argues that Plaintiff cannot establish the second and fourth prongs necessary to maintain a prima facie case for sex discrimination.  Defendant contends Plaintiff cannot demonstrate that she performed her job adequately or satisfactorily because she violated their theft policy.  As to the fourth prong, Defendant submits that Plaintiff fails to show that other similarly situated employees who do not belong to the same protected class were treated differently.  Defendant argues that there are no male and/or non-pregnant female employees who ate product without paying for it and who were not also terminated.  [Mem. in Supp. of Motion at 7-8.]  Defendant presented evidence that managerial employees such as Plaintiff are held to a higher standard, [Def.'s Concise Statement of Facts in Supp. of Motion ("Def.'s CSOF"), Decl. of Girish Varma ("Varma Decl.") at ¶ 4,[1]] and that Plaintiff understood that she was expected to lead by example [id., Decl. of Jeffrey S. Harris ("Harris Decl"), Exh. A (excerpts of Plaintiff's 7/26/11 deposition transcripts) at 32-33].  It represents that it terminated a male non-manager for taking food without paying for it, and that the amount was smaller than the food Plaintiff took.

_____

[1] Girish Varma was the Payroll and Benefits Specialist for the Whole Foods Market, Kahala store during Plaintiff's employment.  The Payroll and Benefits Specialist is responsible for the store's human resource functions.  [Varma Decl. at ¶¶ 1, 3.]

[Id., Decl. of Allison Augusta ("Augusta Decl.") at ¶ 7.[2]]

Defendant argues that Plaintiff was terminated for a legitimate, non-discriminatory reason – violation of the company's theft policy for eating product without paying for it. It claims that she cannot show pretext because Whole Foods conducted an investigation and gave Plaintiff every opportunity to produce a receipt for her meal, but that she eventually admitted that she did not pay for it, and she was terminated for failing to pay for food she consumed. [Mem. in Supp. of Motion at 9-10; Def.'s CSOF, Decl. of Raymond G. Stockton ("Stockton Decl.") at ¶¶ 5-10, 12, 15-18.[3]] Defendant emphasizes that it has not wavered in its reason for terminating Plaintiff and that its explanation is believable, and made in good faith. [Mem. in Supp. of Motion at 10.]

In her opposition, Plaintiff emphasizes that she was terminated the day after she gave her supervisor, Mr. Stockton, a medical certificate stating that she needed to sit for thirty minutes every two hours and could only work for six hours per day, and Mr. Stockton told her that he could not accommodate

---

[2] Ms. Augusta is the current Payroll and Benefits Specialist for the Whole Foods Market, Kahala store. [Augusta Decl. at ¶ 1.]

[3] Mr. Stockton was the Store Team Leader, also known as the Store Manager, for the Kahala store during Plaintiff's employment. [Stockton Decl. at ¶¶ 1, 3.]

those restrictions.[4]  Plaintiff states that, although she

inadvertently forgot to pay for her breakfast, she had never been

asked for a receipt previously, nor had she seen other employees

being asked for receipts during her employment with Defendant.

[Mem. in Opp. at 1, Decl. of Isabella Nunes-Baptista ("Pltf.

Decl.") at ¶¶ 3, 9-11, 18, 20.]

Plaintiff argues that the theft policy requires the act

of stealing to be intentional and to be done with the intent to

defraud Defendant, and that, because she did not intentionally

fail to pay for the food, she did not violate the policy.  [Mem.

in Opp. at 4.]  The Court is not persuaded by this argument.

Defendant's policy provides, in pertinent part, that:

> c.  Team Members who engage in any of the
>     following conduct will be subject to
>     immediate termination:
>     •   taking merchandise without paying for
>         it[.]

[Def.'s CSOF, Harris Decl., Exh. E (Whole Food Market Northeast

Region Theft Policy) at 1.]  Plaintiff does not deny that she did

not pay for the food that she took off the store's retail floor.

---

[4] Plaintiff gave Mr. Stockton and Defendant's Human
Resources office her disability certificate on July 28, 2009, and
Mr. Stockton presented her with termination papers on July 30,
2009.  [Pltf. Decl. at ¶¶ 10, 21-22.]  Plaintiff, however,
believes that Mr. Stockton made the decision to terminate her on
July 29, 2009, as evidenced by the fact that he sent her home and
instructed her to return the next day at 11:00 a.m., instead of
at her scheduled starting time, which was earlier in the day.
[Id. at ¶ 31.]

As to the fourth prong, Plaintiff has offered no specific examples of similarly situated employees being treated more favorably.  To satisfy this prong for her gender discrimination claim, she must show that male employees engaged in similar conduct were treated more favorably.  Similarly situated employees must "have similar jobs and display similar conduct."  Vasquez, 349 F.3d at 641.  Plaintiff offered no such evidence in her opposition.

Accordingly, Plaintiff fails to make out a prima facie case of gender discrimination.

**B.   Pretext**

Insofar as this Court has concluded that Plaintiff fails to establish a prima facie case of gender discrimination, this Court need not address Plaintiff's pretext argument.  This Court, however, will address the pretext issue for the sake of completeness.

> In examining the level of proof of pretext required, the Ninth Circuit distinguishes between direct and circumstantial evidence.  In both Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007), and Godwin [v. Hunt Wesson, Inc.], 150 F.3d [1217,] 1220 [(9th Cir. 1998)], the Ninth Circuit states: "When the plaintiff offers *direct evidence* of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." (Emphasis added.)  Clemmons ignores the express limitation to direct evidence and says, "If the plaintiff submits *direct or circumstantial* evidence, 'a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial.' Id. (quoting Godwin

at 1221)." Opposition at 26-27, ECF No. 87
(emphasis added). <u>Godwin</u> made it clear that more
is required when the evidence is purely
circumstantial:

> In those cases where direct evidence is
> unavailable, however, the plaintiff may come
> forward with circumstantial evidence that
> tends to show that the employer's proffered
> motives were not the actual motives because
> they are inconsistent or otherwise not
> believable. *Such evidence of "pretense" must
> be "specific" and "substantial" in order to
> create a triable issue* with respect to
> whether the employer intended to discriminate
> on the basis of sex.

<u>Godwin</u>, 150 F.3d at 1222 (citations omitted)
(emphasis added). This distinction was the focus
in <u>Godwin</u>. The Ninth Circuit was attempting to
reconcile the "apparently differing standards" for
a plaintiff's burden of proof based on the type of
evidence presented by the plaintiff. <u>See</u> <u>id.</u> at
1221.

<u>Clemmons v. Haw. Med. Servs. Ass'n</u>, Civil. No. 10-00513 SOM/BMK,

2011 WL 6841008, at *11 (D. Hawai`i Dec. 29, 2011).

Plaintiff argues that the stated reason for her

termination was pretextual because Mr. Stockton did not want to

comply with her work restrictions due to her pregnancy. She

reasons that it is more likely that Mr. Stockton was looking for

a reason to terminate her so that he would not need to

accommodate her pregnancy restrictions. [Mem. in Opp. at 4.]

This assertion falls short of the "specific" and "substantial"

type of circumstantial evidence that Plaintiff is required to

demonstrate to create a triable issue as to whether Defendant

intended to discriminate on the basis of her sex. <u>Cf.</u> <u>Clemmons</u>,

11

2011 WL 6841008, at *10-11 (stating that plaintiff's termination "just days" after making a complaint and his "conjecture that his complaint about Aquino was related to his termination" was "neither 'specific' nor 'substantial' (citing <u>Goodwin</u>, 150 F.3d at 1222 (indirect evidence through comparison of plaintiffs' credentials and evaluations with another candidate's similar credentials and poor evaluations))). Further, Plaintiff does not dispute that she did not pay for her breakfast when she took it off of the store's retail floor. Accordingly, The Court CONCLUDES that Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

## II. <u>Count I - Disability Discrimination/Failure to Accommodate</u>

Count I also alleges disability discrimination/failure to accommodate Plaintiff's pregnancy-related disability.

> The Hawai`i courts have recognized that the ADA and Hawai`i disability discrimination laws are similar, and the Hawai`i Supreme Court has expressly adopted the ADA elements of a prima facie case as the elements of a prima facie case under H.R.S. § 378-2. <u>See French v. Hawaii Pizza Hut, Inc.</u>, 105 Hawai`i 462, 467, 99 P.3d 1046, 1053 (2004). In <u>French</u>, the Hawai`i Supreme Court explained:

> The Hawai`i statutes and [the Hawai`i Administrative Rules] prohibiting discrimination based on disability are textually similar to the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101. Because of the similarities between the ADA and our own HRS chapter 378, we adopt the analysis for establishing a prima facie case of disability discrimination under HRS § 378-2 that was established in <u>Sutton v.</u>

United Air Lines, Inc., 527 U.S. 471, 119 S.
Ct. 2139, 144 L. Ed. 2d 450 (1999).  In
Sutton, to establish a prima facie case of
disability discrimination under the ADA, a
plaintiff has the burden of establishing
that: (1) he or she is an individual with a
"disability" within the meaning of the
statute; (2) he or she is otherwise qualified
to perform the essential duties of his or her
job with or without reasonable accommodation;
and (3) he or she suffered an adverse
employment decision because of his or her
disability.  Id. at 477-78, 481, 119 S. Ct.
2139.

As to the determination of "disability,"
HRS § 378-1, similar to the ADA, defines
disability as "the state of having a physical
or mental impairment, which substantially
limits one or more major life activities."
See 42 U.S.C. § 12102(2) (defining disability
as "a physical or mental impairment that
substantially limits one or more of the major
life activities of such individual").  Hence,
a "physical or mental impairment" is a
disability if the impairment "substantially
limits" a "major life activity."  HRS §
378-1.

French, 105 Hawai`i at 467, 99 P.3d at 1051
(footnotes omitted).  The Hawai`i Supreme Court
further explained that the three-part test
developed to determine whether a Plaintiff meets
the disability requirement under the ADA was
relevant in a § 378-3 case because "HRS § 378-1
contains similar language found in the ADA."  Id.
Accordingly, Hawai`i courts have looked to
interpretations of analogous federal laws by the
federal courts for guidance when deciding
discrimination claims under H.R.S. § 378-1 and §
378-2.  Id.; see also Suzuki v. State, 119 Hawai`i
288, 297-98, 196 P.3d 290, 299-300 (App. 2008)
(citing French).

Lovell v. United Airlines, Inc., 728 F. Supp. 2d 1096, 1106-07

(D. Hawai`i 2010) (footnote omitted).

Defendant similarly argues that Plaintiff cannot prevail on a disability discrimination or a failure to accommodate claim because she cannot establish that she was a qualified individual and that she was terminated because of her disability. It argues that she was not a qualified individual because she violated its theft policy, and that no reasonable accommodation was available, given Plaintiff's misconduct. [Mem. in Supp. of Motion at 13-14.]

Defendant contends that Plaintiff was granted all pregnancy-related requests during her employment. [Id. at 15.] Plaintiff made two requests for accommodation, one in January 2009 (lifting restrictions) and one in July 2009 (reduced work hours and standing restrictions). Defendant maintains that it accommodated both of her requests, told her to comply with her doctor's instructions, and that, as a manager, Plaintiff had control over her own work schedule because she was responsible for scheduling the bakery staff and herself. [Def.'s CSOF, Stockton Decl. at ¶¶ 21-24; Augusta Decl. at ¶¶ 4-5; Harris Decl., Exh. A at 30.] Defendant defends its decision to terminate Plaintiff and argues that Plaintiff did not suffer any adverse employment action because of her pregnancy-related disability but was terminated for legitimate nondiscriminatory reasons, irrespective of her being pregnant. It argues that she cannot show pretext because two other pregnant employees were

accommodated during their pregnancies. [Mem. in Supp. of Motion at 16-18; Def.'s CSOF, Stockton Decl. at ¶ 25.] Next, Defendant argues that Plaintiff has not shown pretext because, when she told Mr. Stockton that she had standing and hours restrictions, he approved her request and told her to comply with her doctor's restrictions, as there was work she could do sitting down. [Def.'s CSOF, Stockton Decl. at ¶ 22; Augusta Decl. at ¶ 5; Harris Decl., Exh. A at 115-17.] It maintains that there is no evidence that Mr. Stockton said he would not comply with her restrictions. [Reply at 4.]

In her opposition, Plaintiff makes the same arguments as to the sex discrimination claim, that is, she emphasizes that she was terminated just one day after giving Mr. Stockton a medical certificate setting forth her disability accommodations, and his statement that he could not accommodate the restrictions. She states that, while she did inadvertently forget to pay for her breakfast, she had never been asked for a receipt previously, nor had she seen other employees being asked for receipts during her employment with Defendant. [Mem. in Opp. at 1, Pltf. Decl. at ¶¶ 3, 9-11, 18, 20.]

While the Court is disconcerted by the fact that Plaintiff was terminated for an incident which occurred just one day after giving her supervisor a medical certificate and making a third request for accommodation because of her pregnancy, it is

15

not disputed that Plaintiff's prior requests for accommodation for her restrictions as to standing and the number of hours that she could work were approved by her supervisor during her pregnancy, and that she did not pay for food that she took out of her employer's store.  Thus, Plaintiff cannot establish a prima facie case of disability discrimination or failure to accommodate.

The Court therefore GRANTS Defendant's Motion as to Count I, Plaintiff's gender and disability discrimination claims pursuant to federal and state law.

## III. Count II - Hostile Work Environment

Count II alleges that Defendant's actions created a hostile work environment.  At the outset, this Court notes that:

> A Title VII plaintiff must first exhaust his or her administrative remedies with the EEOC.  See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1104 (9th Cir. 2008); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002); see also Vasquez v. County of L.A., 349 F.3d 634, 645-46 (9th Cir. 2003).  "Allegations of discrimination not included in the plaintiff's administrative charge 'may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.'"  B.K.B., 276 F.3d at 1100 (quoting Green v. L.A. County Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989)).  The court may entertain "all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge."  Vasquez, 349 F.3d at 644.  For the defendant, this requirement invokes principles of notice and fair play.  Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).

In determining whether a plaintiff's claims
are sufficiently "like or reasonably related to"
the allegations in her administrative charge for
exhaustion purposes, a court may "consider such
factors as the alleged basis of the
discrimination, dates of discriminatory acts
specified within the charge, perpetrators of
discrimination named in the charge, and any
locations at which discrimination is alleged to
have occurred." <u>See</u> <u>B.K.B.</u>, 276 F.3d at 1100.
The court also considers whether the "plaintiff's
civil claims . . . are consistent with the
plaintiff's original theory of the case." <u>Id.</u>
Allegations in the EEOC charge are construed "with
utmost liberality," as they are typically made by
those unfamiliar with formal pleading
requirements. <u>Id.</u>

<u>Rezentes v. Sears, Roebuck & Co.</u>, Civ. No. 10-00054 SOM/KSC, 2010

WL 4273116, at *3 (D. Hawai`i Oct. 22, 2010).

With respect to the Count II hostile work environment

claim, Defendant argues that Plaintiff failed to exhaust her

administrative remedies because her charge cannot be reasonably

read as putting it on notice of a hostile work environment claim.

Here, Defendant argues that her charge, pre-complaint

questionnaire, and the investigator's notice lack facts implying

a hostile work environment or harassment. [Mem. in Supp. Of

Motion at 20-21.] Plaintiff did not dispute this argument in

either her memorandum in opposition or at the hearing on the

Motion.

Plaintiff has not established a genuine issue of

material fact as to her failure to exhaust her administrative

remedies as to the hostile work environment claim. Viewing the

17

facts in the light most favorable to Plaintiff, her allegations of a hostile work environment do not survive summary judgment. Defendant's Motion is therefore GRANTED as to Count II.

## IV.  Count III - IIED

Finally, Count III alleges a IIED claim.  "The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  Hac v. Univ. of Haw., 102 Hawai`i 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting IIED standard from Restatement (Second) of Torts).

> In explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the Restatement (Second) of Torts states:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., Inc., 76 Hawai`i 454,

465 n.12, 879 P.2d 1037, 1048 n.12 (1994) (quoting Restatement
(Second) of Torts § 46, cmt. d. (1965)). "The question whether
the actions of the alleged tortfeasor are . . . outrageous is for
the court in the first instance, although where reasonable
persons may differ on that question it should be left to the
jury." Nagata v. Quest Diagnostics Inc., 303 F. Supp. 2d 1121,
1127 (D. Hawai`i 2004) (citing Shoppe v. Gucci Am., Inc., 94
Hawai`i 368, 387, 14 P.3d 1049, 1068 (2000)).

Defendant argues that it is entitled to summary
judgment on Plaintiff's IIED claim because termination alone is
not outrageous conduct, and, even taking the allegations in the
Complaint as true, her termination was not outrageous. Further,
it argues that there is no evidence that Defendant's alleged
conduct was the actual cause of any severe emotional distress, or
that it was reckless or intended to cause her emotional distress.
To the extent Plaintiff seeks punitive damages based on her IIED
claim, Defendant argues that Plaintiff's request also fails.
[Mem. in Supp. of Motion at 22-24.]

In opposition, Plaintiff states that she was terminated
when her husband was unemployed and she was the sole provider for
her family. Her termination caused depression, as she was
extremely emotionally upset that she was terminated for an unjust
reason. She claims the loss of her job put an enormous burden on
her relationship. After she was terminated, her doctor was

concerned because her blood pressure escalated, and Plaintiff was admitted and kept in the hospital to have her blood pressure checked hourly. Her baby was born several weeks early by cesarean section because of her physical condition, rather than the natural birth for which she had planned. Upon termination, Plaintiff lost her health insurance coverage, just before she gave birth. [Pltf. Decl. at ¶¶ 26, 28-29.]

Plaintiff's unfortunate experiences are indeed distressful and emotionally upsetting. However, even when viewed in the light most favorable to Plaintiff, there is no evidence that Defendant's termination of Plaintiff for an admitted violation of the theft policy was outrageous. Cf. Weaver v. A-American Storage Mgmt. Co., Civil No. 10-00600 JMS-KSC, 2011 WL 97651, at *8 (D. Hawai`i Jan. 12, 2011) ("Intentionally discriminating against an employee based on race, terminating him after only a few weeks in violation of federal and state law, evicting him, taking his residence and car, forcing him to remove his belongings to the street, and later giving false information to prospective employers could constitute 'outrageous' conduct for purposes of IIED."); Angel v. Wal-Mart Stores, Inc., Civil No. 09-00361 JMS/KSC, 2010 WL 3951997, at *10 (D. Hawai`i Oct. 6, 2010) ("Defendant presented evidence establishing that Crowley and Halsey decided to terminate Plaintiff after they found that she violated Wal-Mart's Open Door Policy, refused to acknowledge

her violation, and refused to follow their instructions. That Plaintiff apparently disagrees with Crowley's interpretations of the Open Door Policy and has asserted that she did not violate any Wal-Mart policies, does not suggest that Halsey and Crowley fabricated this violation or otherwise maliciously terminated her." (citations omitted)).

Defendant is therefore entitled to summary judgment on Plaintiff's IIED claim, and Defendant's Motion is GRANTED as to Count III.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment, filed September 27, 2011, is HEREBY GRANTED. The Court directs the Clerk's Office to enter judgment in favor of Defendant on all claims.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 30, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge


**ISABELLA NUNES-BAPTISTA V. WFM HAWAII, LLC, ETC., ET AL; CIVIL NO. 11-00104 LEK-BMK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, FILED SEPTEMBER 27, 2011**